## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| APOTEX INC.<br>150 Signet Drive<br>Weston, Ontario, Canada  M9L 1T9<br><br>Plaintiff,<br><br>v.<br><br>FOOD AND DRUG ADMINISTRATION<br>5600 Fishers Lane<br>Rockville, MD  20857<br><br>MICHAEL O. LEAVITT<br>Secretary of Health and Human Services<br>200 Independence Avenue, SW<br>Washington, D.C.  20201<br><br>and<br><br>ANDREW VON ESCHENBACH<br>Acting Commissioner of Food and Drugs<br>5600 Fishers Lane<br>Rockville, MD  20857<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. _____ |

### COMPLAINT

Plaintiff Apotex Inc. ("Apotex"), for its complaint against the Food and Drug Administration ("FDA"); Michael O. Leavitt, Secretary of Health and Human Services; and Andrew von Eschenbach, Acting Commissioner of Food and Drugs, alleges as follows:

### Nature Of The Action

1.     Apotex brings this action for declaratory and injunctive relief challenging FDA's unlawful refusal to approve Apotex's ANDA No. 76-341 for generic pravastatin sodium tablets on April 20, 2006, when the only remaining exclusivity for this product expires. Apotex has

satisfied all substantive requirements for, and there are no unexpired exclusivities delaying, final approval. FDA's refusal therefore violates the Federal Food, Drug, and Cosmetic Act ("FFDCA") and the Administrative Procedure Act ("APA").

2.     FDA has refused to approve Apotex's pravastatin ANDA on the ground that another applicant, Teva Pharmaceuticals USA, Inc. ("Teva"), is entitled to a period of so-called "180-day generic exclusivity." But any such exclusivity was triggered and expired long ago by virtue of the July 23, 2004 Order dismissing Apotex's declaratory judgment action against Bristol-Myers Squibb ("BMS") ("the BMS-Apotex Dismissal Order"). FDA's refusal to treat the BMS-Apotex Dismissal Order as a "court decision trigger" under the FFDCA is arbitrary, capricious, and contrary to law. Under any proper interpretation of the FFDCA, the BMS-Apotex Dismissal Order qualifies as a court decision that triggered Teva's exclusivity no later than August 22, 2004, which exclusivity has now expired.

3.     FDA's refusal will deny Apotex lawful access to the pravastatin market, thus causing irreparable harm for which Apotex is entitled to immediate declaratory and injunctive relief from this Court:

    (a)    declaring that FDA's refusal to treat the BMS-Apotex Dismissal as a triggering court decision is arbitrary, capricious, and contrary to law;

    (b)    directing FDA to finally approve Apotex's ANDA No. 76-341 for pravastatin tablets on April 20, 2006;

    (c)    declaring that FDA's determination that Teva is entitled to an unexpired period of 180-day exclusivity for pravastatin tablets is arbitrary, capricious, and contrary to law; and

    (d)    enjoining final approval of all pravastatin ANDAs, and in particular Teva's ANDA No. 76-056, pending resolution of this action.

## Parties

4.      Plaintiff Apotex is a corporation organized and existing under the laws of Canada having a place of business at 150 Signet Drive, Weston, Ontario Canada M9L 1T9. Apotex develops and manufactures generic drugs for sale and use in the United States and throughout the world.

5.      Defendant Michael O. Leavitt is the Secretary of Health and Human Services, and the official charged by law with administering the FFDCA. He is sued in his official capacity. Secretary Leavitt maintains offices at 200 Independence Avenue, S.W., Washington, D.C. 20201.

6.      Defendant Andrew von Eschenbach is the Acting Commissioner of Food and Drugs. He is sued in his official capacity. Acting Commissioner von Eschenbach has been delegated the authority to administer the drug approval provisions of the FFDCA through FDA. He maintains offices at 5600 Fishers Lane, Rockville, Maryland 20857.

## Jurisdiction And Venue

7.      This action arises under the FFDCA, 21 U.S.C. § 301 *et seq.*; the APA, 5 U.S.C. § 551 *et seq.*; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1361.

8.      This Court has personal jurisdiction over the defendants because they are either located and/or conduct substantial business in, or have regular and systematic contact with, this District.

9.      Venue is proper in this District under 28 U.S.C. § 1391(e).

10.     FDA's agency action and/or inaction constitutes an actual controversy, for which Apotex is entitled to review and relief under 5 U.S.C. §§ 702, 704-706. Apotex has standing to

maintain this action, pursuant to the APA, as a legal entity that has suffered a legal wrong and has been adversely affected by final agency action and/or agency action unlawfully withheld.

11.    There exists an actual, substantial, and continuing controversy between the parties regarding FDA's refusal to approve Apotex's ANDA No. 76-341 upon expiration of the period of pediatric exclusivity associated with U.S. Patent No. 4,346,227 ("the '227 patent"), which refusal is arbitrary, capricious, and contrary to law.  This Court may declare the rights and legal relations of the parties under 28 U.S.C. §§ 2201, 2202.

## Background

### I.    Statutory Framework For Approval Of New And Generic Drugs

#### A.    New Drugs—NDAs and Patent Listing Requirements

12.    A company seeking to sell an original new drug must file a new drug application ("NDA") containing technical data on the composition of the drug, the means for manufacturing it, clinical trial results to establish the safety and efficacy of the drug, and labeling for use of the drug for which approval is requested. *See* 21 U.S.C. § 355(b)(1).

13.    An NDA applicant must also submit information to FDA with respect to any patent that "claims the drug for which the applicant submitted the application or which claims a method of using such drug . . . ." 21 U.S.C. §§ 355(b)(1), (c)(2).  After approving the NDA, FDA publishes this patent information in the "Orange Book." *See id.*; 21 C.F.R. § 314.53(e).

#### B.    Generic Drugs—ANDAs and Patent Certifications

14.    A company seeking FDA approval to market a generic version of a previously-approved NDA drug may file an ANDA without repeating the comprehensive and extensive human clinical studies conducted for the NDA drug.  A generic ANDA applicant must, however, establish that its proposed product is bioequivalent to the already-approved NDA drug and, with certain exceptions, that it has the same active ingredient, dosage form, dosage

strength, route of administration, and labeling as the approved NDA drug. *See* 21 U.S.C. § 355(j)(2)(A).

15.   An ANDA must also include one of four certifications with respect to each Orange Book-listed patent for the NDA drug:  (I) that there is no patent information; (II) that the listed patent has expired; (III) that the ANDA applicant will not market its generic drug until after the expiration of the listed patent, a so-called "paragraph III certification"; or (IV) that the listed patent is invalid and/or will not be infringed by the proposed generic drug, a so-called "paragraph IV certification." *See* 21 U.S.C. § 355(j)(2)(A)(vii).

16.   With certain exceptions not applicable here, an ANDA applicant seeking FDA approval to market its generic drug before expiration of the Orange Book-listed patent must submit a paragraph IV certification, and notify the patentee (and the NDA-holder) of the factual and legal bases for that certification. *See* 21 U.S.C. § 355(j)(2)(B).  Submitting a paragraph IV ANDA has two important consequences.

17.   First, submitting a paragraph IV certification constitutes a technical act of infringement under 35 U.S.C. § 271(e)(2)(A), thereby vesting the district courts with subject matter jurisdiction to adjudicate whether the proposed generic drug infringes the subject patent before the drug has actually been marketed.

18.   Second, the first applicant to submit an ANDA for a drug product containing a paragraph IV certification for any listed patent may be entitled to a 180-day generic marketing exclusivity period. *See* 21 U.S.C. § 355(j)(5)(B)(iv).

C.   **180-Day Exclusivity and the "Court Decision Trigger"**

19.   Congress created the 180-day exclusivity provision by preventing FDA from approving competing generic products until 180 days after the earlier of two so-called

"triggering events." The relevant statutory provision, as it existed prior to amendment in 2003 (which amendment does not apply to pravastatin sodium ANDAs), provides:

> (iv) If the application contains a [paragraph IV certification] . . . and is for a drug for which a previous application has been submitted under this subsection [containing] such a certification, the application shall be made effective not earlier than one hundred and eighty days after—
>
> > (I)    the date the Secretary receives notice from the applicant under the previous application of the first commercial marketing of the drug under the previous application, or
> >
> > (II)    the date of a decision of a court in an action described in clause (iii) holding the patent which is the subject of the certification to be invalid or not infringed,
>
> whichever is earlier.

21 U.S.C. § 355(j)(5)(B)(iv).

20.    Thus, the 180-day exclusivity period is triggered by the earlier of: (1) the first-filer's commercial marketing ("the commercial marketing trigger"); or (2) relevant to this case, a final, unappealable court decision that the patent is invalid or not infringed ("the court decision trigger"). 21 U.S.C. § 355(j)(5)(B)(iv)(I)-(II). FDA approves all otherwise-eligible ANDAs as soon as the 180-day exclusivity period expires.

21.    A triggering "court decision" can be obtained by any ANDA applicant in any patent infringement case involving the patent-at-issue. Thus, the first generic applicant's 180-day exclusivity period can be triggered by a court decision in a case to which that applicant is not a party, and the exclusivity period can begin to run and expire before the first applicant is even approved or on the market.

22.    Further, the court decision trigger encompasses a broad spectrum of court orders, including a finding of patent unenforceability, even though this ground does not appear in the statute (*Teva Pharms. USA, Inc. v. FDA*, 182 F.3d 1003, 1009 (D.C. Cir. 1999)), and the grant

of partial summary judgment based on the patentee's admission of non-infringement (*Teva*, 182 F.3d at 1010; *Granutec, Inc. v. Shalala*, 139 F.3d 889, 1998 WL 153410, at *5 (4th Cir. Apr. 3, 1998)).   The dismissal of a declaratory judgment action for lack of subject matter jurisdiction also has been found to satisfy the court decision trigger, so long as the dismissal precludes the patentee from bringing suit in the future.  *Teva*, 182 F.3d at 1009, 1011; *see also Teva Pharms. USA, Inc. v. FDA*, No. Civ.A. 99-67(CKK), 1999 WL 1042743, at *5-*7 (D.D.C. Aug. 19, 1999); *Teva Pharms. USA, Inc. v. FDA*, 254 F.3d 316, 2000 WL 1838303, at *2 (D.C. Cir. Nov. 15, 2000).

## II.    Background Facts.

23.   BMS holds approved NDA No. 19-898 for pravastatin sodium tablets, which are sold under the brand-name Pravachol®.  FDA has approved pravastatin for, among other things, hyperlipidemia and the primary prevention of coronary events.

24.   BMS submitted several patents for listing in the Orange Book, including the '227 patent, and U.S. Patent Nos. 5,030,447 ("the '447 patent"); 5,180,589 ("the '589 patent"); and 5,622,985 ("the '985 patent").  The basic '227 patent expired October 20, 2005.  The period of pediatric exclusivity associated with the '227 patent expires on April 20, 2006.

25.   On information and belief, Teva submitted the first paragraph IV ANDA for pravastatin tablets, containing a paragraph III certification to the '227 patent and a paragraph IV certification to at least one of the other Orange Book-listed patents.  As a result, Teva's ANDA is not eligible for final approval until at least April 20, 2006, when the pediatric exclusivity associated with the '227 patent expires.

26.   Apotex also submitted an ANDA for pravastatin tablets containing a paragraph III certification to the '227 patent and paragraph IV certifications to the '447, '589 and '985

patents. Consequently, Apotex, like Teva, is not eligible for final approval until at least April 20, 2006.

27. BMS did not sue any pravastatin ANDA applicant. Apotex, seeking patent certainty prior to launch, sued BMS, seeking a declaratory judgment that its ANDA products did not infringe the '447, '589 and '985 patents, or that such patents were invalid.

28. BMS moved to dismiss Apotex's declaratory judgment action for lack of subject matter jurisdiction. BMS argued that Apotex lacked a reasonable apprehension of suit in light of BMS's binding representation, contained in filed court papers and a sworn declaration, that it "*will **not** sue Apotex for infringement of the '447, '589, and '985 patents, based on the representations Apotex has made regarding its generic pravastatin sodium product.*" BMS's motion and supporting papers contained other unequivocal, binding statements about Apotex's right to market free from fear of an infringement suit on the '447, '589, and '985 patents, including:

- "[BMS] has no intention, *now or in the future*, of suing Apotex for infringement of any of the '447, '589, and '985 patents."

- "[I]f [Apotex's] representations [about its ANDA product] are indeed true, [BMS] will not sue Apotex on the '447, '589 or '985 patents."

29. The district court did not rule on BMS's motion, instead striking it for failure to comply with pre-motion procedures. However, on July 23, 2004 the court entered an Order (the "BMS-Apotex Dismissal Order") dismissing Apotex's declaratory judgment action for lack of subject matter jurisdiction based upon BMS's binding representations that it would not sue Apotex, now or in the future. The BMS-Apotex Dismissal Order became final and unappealable on August 22, 2004. FDA has repeatedly conceded and acknowledged that the

BMS-Apotex Dismissal Order constitutes a "decision of a court" with preclusive effect that estops BMS from ever suing Apotex on the '447, '589, and '985 patents.

30.    On September 7, 2004, Apotex sent a letter to FDA, seeking confirmation that the dismissal of its declaratory judgment action against BMS triggered any generic exclusivity that would be awarded for pravastatin.

31.    On June 28, 2005, FDA responded to Apotex's letter, confirming that exclusivity for all strengths of pravastatin expired no later than February 18, 2005, having been triggered by the dismissal of Apotex's declaratory judgment action.  FDA further concluded that Apotex's pravastatin ANDA would be eligible for immediate final approval on April 20, 2006.

32.    On July 26, 2005, Teva sued FDA challenging the Agency's June 28, 2005 administrative ruling and seeking to enjoin FDA from approving any other pravastatin ANDAs until Teva's 180-day exclusivity has expired.  On October 21, 2005, Teva was granted permanent injunctive relief enjoining the Agency from approving any pravastatin ANDAs, other than Teva's, until Teva's 180 days of marketing exclusivity has expired.  Apotex and FDA appealed that decision.

33.    On March 16, 2006, the D.C. Circuit vacated the district court's judgment and remanded with instructions to vacate FDA's June 28, 2005 decision and remand to the Agency for further proceedings.  The Court found that, although the *Teva* Court "stated that the statute *could* be interpreted to include dismissals of declaratory judgment actions as triggering events," the *Teva* decisions did not announce a rule of law and, thus, "FDA's 'stated rationale for its decision' is erroneous" and cannot be sustained. *Teva Pharms. USA, Inc. v. FDA*, --- F.3d ----, 2006 WL 644903, at *3-*4 (D.C. Cir. Mar. 16, 2006).

34.   On March 17, 2006, FDA's June 28, 2005 administrative decision was vacated and Teva's case was remanded to the Agency.

35.   Apotex's September 7, 2004 request for an administrative decision as to whether the BMS-Apotex Dismissal Order triggered Teva's pravastatin exclusivity is once again before the Agency.  FDA stated in papers filed with the D.C. Circuit and during oral argument before that Court that, if the *Teva* decisions provide no "binding, substantive rule of law"—as the D.C. Circuit has now held—the Agency's firm position is "that the plain language of section 355(j)(5)(B)(iv)(II) does not embrace dismissals of declaratory judgment actions for lack of subject-matter jurisdiction" and that "the [BMS-Apotex] dismissal would not qualify as a triggering court decision, because it does not contain a holding of invalidity, non-infringement, or unenforceability."  The Agency has further stated, "if FDA were free to apply its own interpretation of section 355(j)(5)(B)(iv)(II), it would interpret that provision to require that a court decision hold the patent to be invalid, not infringed, or unenforceable, so that dismissals that hold only that jurisdiction is absent would not constitute triggering court decisions."  In fact, FDA repeatedly argued that a remand was not even necessary because the Agency had already made its decision that the BMS-Apotex Dismissal Order does not qualify as a triggering court decision under the statute.  To date, as the D.C. Circuit noted, FDA has provided no explanation or reasoning supporting this interpretation.

36.   Teva has announced that it intends to launch its generic pravastatin products immediately upon expiration of the pediatric exclusivity associated with the '227 patent.

37.   If FDA allows Teva to launch its pravastatin products with 180-day exclusivity, Apotex will suffer substantial irreparable harm.

38.    Money damages are not available to compensate Apotex for its wrongful losses because there is no private right of action that Apotex could bring against FDA for damages.

39.    But for FDA's unlawful refusal to treat the BMS-Apotex Dismissal Order as a court decision trigger under 21 U.S.C. § 355(j)(5)(B)(iv)(II), Apotex would be eligible for final approval on April 20, 2006.

40.    As held in the *Teva* decisions, FDA's refusal to treat the BMS-Apotex Dismissal Order as a court decision trigger under 21 U.S.C. § 355(j)(5)(B)(iv)(II) reflects disparate treatment between similarly situated parties and is further contrary to the purpose of the court decision trigger provision. FDA's refusal to treat the BMS-Apotex Dismissal Order as a court decision trigger thus is arbitrary, capricious, and contrary to law.

41.    As a direct and proximate result of FDA's unlawful exclusivity determination, Apotex will suffer imminent irreparable harm and substantial damages for which Apotex is entitled to immediate declaratory and injunctive relief.

42.    Apotex is further entitled to emergency interim injunctive relief enjoining FDA from awarding final approval to any pravastatin ANDAs until resolution of this suit.

## CLAIMS FOR RELIEF

### Count I
### (Violation of the FFDCA and APA, 5 U.S.C. § 706)

43.    Apotex repeats and realleges the foregoing paragraphs as though fully alleged herein.

44.    FDA's refusal to treat the BMS-Apotex Dismissal as a triggering court decision under 21 U.S.C. § 355(j)(5)(B)(iv)(II), and the Agency's related refusal to approve Apotex's ANDA No. 76-341 for pravastatin sodium tablets upon expiration of the pediatric exclusivity associated with the '227 patent, is agency action unlawfully withheld within the meaning of 5

U.S.C. § 706(1); arbitrary, capricious, and not in accordance with the law within the meaning of 5 U.S.C. § 706(2)(A); in excess of statutory authority within the meaning of 5 U.S.C. § 706(2)(C); and in violation of the FFDCA.

45.    FDA's refusal to approve Apotex's ANDA No. 76-341 based on the Agency's unlawful award of a period of 180-day exclusivity to Teva constitutes final agency action that is reviewable by this Honorable Court.

46.    Properly applied here, Teva is not entitled to a period of 180-day exclusivity for pravastatin sodium tablets under 21 U.S.C. § 355(j)(5)(B)(iv)(II).  The only possible exclusivity period for pravastatin was triggered by the BMS-Apotex Dismissal Order as of August 22, 2004, and expired, at the latest, by February 18, 2005.  FDA therefore has no basis or authority under the FFDCA or its regulations to withhold final approval of Apotex's ANDA No. 76-341 for pravastatin tablets once the pediatric exclusivity associated with the '227 patent expires.

47.    Apotex has exhausted its administrative remedies, as any further discussions with FDA would be futile in light of its articulated position on the legal issues raised herein.

48.    Apotex has no adequate remedy at law.

## Count II
### (Relief Pending Review, 5 U.S.C. § 705)

49.    Apotex repeats and realleges the foregoing paragraphs as though fully alleged herein.

50.    FDA's determination that Teva is entitled to an unexpired period of 180-day exclusivity for pravastatin tablets constitutes final agency action that is reviewable by this Honorable Court.

51.    If Teva is permitted to launch its pravastatin tablets with exclusivity on April 20, 2006, Apotex will suffer severe and immediate irreparable harm.

52.     Even if Apotex prevails on the merits of its claims, Apotex will not be able to recover the substantial financial and other intangible losses it will suffer as a result of an exclusive launch by Teva.

53.     Under 5 U.S.C. § 705, Apotex thus is entitled to immediate injunctive relief postponing the effective date of final approval of any pravastatin ANDA, including Teva's ANDA No. 76-056, in order to preserve the *status quo* and rights of the parties pending resolution of this matter on the merits.

54.     Apotex has no adequate remedy at law.

WHEREFORE, Apotex respectfully prays that this Honorable Court enter judgment in its favor and against Defendants, as follows:

(a)     Entry of a judgment declaring that FDA's refusal to treat the BMS-Apotex Dismissal Order as a triggering court decision under 21 U.S.C. § 355(j)(5)(B)(iv)(II) is arbitrary, capricious, and contrary to law;

(b)     Entry of an injunction directing FDA to award final approval to Apotex's ANDA No. 76-341 for pravastatin tablets upon expiration of BMS's pediatric exclusivity on April 20, 2006;

(c)     Entry of a judgment declaring that FDA's determination that Teva is entitled to an unexpired period of 180-day exclusivity for pravastatin tablets is arbitrary, capricious, and contrary to law;

(d)     Entry of an injunction directing FDA to refrain from granting final approval to Teva's pravastatin ANDA No. 76-056, or any other pravastatin ANDAs, pending resolution of this action, or until FDA grants final approval of Apotex's ANDA No. 76-341 for pravastatin tablets, whichever is earlier.

(e)     Entry of an order awarding Apotex its reasonable attorneys' fees and costs of prosecuting this action; and

(f)     Such other and further relief as the Court deems just and proper.

Dated:  April 5, 2006.                          Respectfully submitted,

                                                APOTEX INC.

                                        By:  _____
                                                Arthur Y. Tsien, D.C. Bar No. 411579
                                                OLSSON, FRANK AND WEEDA, P.C.
                                                1400 16th Street, N.W., Suite 400
                                                Washington, D.C. 20036-2220
                                                (202) 789-1212
                                                (202) 234-3550 (facsimile)

                                                *Counsel for Apotex Inc.*

Of Counsel:
William A. Rakoczy, D.C. Bar No. 489082
Christine J. Siwik
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60610
(312) 222-6301
(312) 222-6321 (facsimile)

*Counsel for Apotex Inc.*