UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

APOTEX INC., )
)
)
Plaintiff, )
)
)
v. ) CIVIL NO. 1:06-CV-627
)
FOOD AND DRUG ADMINISTRATION, )
MICHAEL O. LEAVITT, and )
ANDREW VON ESCHENBACH, )
)
)
Defendants, )
)
and )
)
TEVA PHARMACEUTICALS USA, INC., )
)
Intervenor-Defendant. )
)

DECLARATION OF JAYADEEP R. DESHMUKH

I, Jayadeep R. Deshmukh, declare as follows:

1. I am the Vice President - Intellectual Property for Ranbaxy Laboratories Limited. Ranbaxy Laboratories Limited is a publicly traded company engaged in the development, manufacturing and marketing of pharmaceuticals in the United States and worldwide. Ranbaxy Pharmaceuticals, Inc. is a wholly owned subsidiary of Ranbaxy Inc., which is ultimately a wholly owned subsidiary of Ranbaxy Laboratories Limited. Ranbaxy Inc. is the agent of Ranbaxy Laboratories Limited in the United States. Ranbaxy Laboratories Limited has dealt

and continues to deal with the United States Food and Drug Administration ("FDA") through Ranbaxy Inc. and Ranbaxy Pharmaceuticals, Inc.

2. As the Vice President - Intellectual Property for Ranbaxy Laboratories Limited, I am responsible for all intellectual property and regulatory legal aspects of Ranbaxy Laboratories Limited's pharmaceutical business in the United States and in the rest of the world. I am familiar with the marketing of drug products in general and with the marketing of generic drugs in particular. This document is based on my personal knowledge and records retained by Ranbaxy in the ordinary course of business.

3. I obtained a B.S. in Chemical Engineering in 1984 from Manipal Institute of Technology in India; an M.S. in Chemical Engineering in 1989 from Cleveland State University; and a J.D. in 1992 from Case Western Reserve University. I joined Ranbaxy Laboratories Limited in 1998. I was a patent attorney at Frost and Jacobs during 1992-1994 and Dinsmore & Shohl LLP during 1994-1998.

4. Ranbaxy Laboratories Limited manufactures and markets generic and branded generic pharmaceuticals, and active pharmaceutical ingredients. The company also is engaged in research and development of several novel drugs.

5. Pravachol has been approved by FDA to, among other things, reduce the risk of myocardial infarction, reduce the risk of undergoing myocardial revascularization procedures, reduce the risk of cardiovascular mortality, reduce the risk of stroke and slow the progression of coronary atherosclerosis.

6. Bristol-Myers Squibb Company ("BMS") is the holder of an approved new drug application ("NDA"), for pravastatin sodium, which it markets in 10 mg, 20 mg, 40 mg, and 80 mg tablets under the trade name Pravachol. BMS has listed four patents in the Orange Book as

claiming Pravachol: U.S. Patent No. 4,346,227 ("the '227 patent"), U.S. Patent No. 5,030,447 ("the '447 patent"), U.S. Patent 5,180,589 ("the '589 patent"), and U.S. Patent No. 5,622,985 ("the '985 patent"). BMS has also been awarded pediatric exclusivity which effectively extends each patent's protection for six months following its otherwise applicable expiration date. According to FDA's Orange Book, this means that the '227 patent expires on April 20, 2006, the '447 patent and the '589 patent expire on January 9, 2009, and the '985 patent expires on October 22, 2014.

7. Ranbaxy Laboratories Limited submitted ANDA 76-413 on June 26, 2002, seeking approval to market a generic version of pravastastin sodium tablets 10 mg, 20 mg, 40 mg, and 80 mg. Ranbaxy's ANDA contained a paragraph III certification to the '227 patent, paragraph IV certifications to the '447 and '589 patents and a statement under Section 505(j)(2)(A)(viii) of the Food, Drug, and Cosmetic Act that the '985 is a method of use patent and Ranbaxy does not seek approval for the indications claimed by the '985 patent. Ranbaxy's ANDA received tentative approval on September 30, 2003. BMS did not sue Ranbaxy for patent infringement. Pursuant to FDA regulations, the tentative approval of Ranbaxy's ANDA signified that it had satisfied all requirements for approval, but that the effective date of the approval was deferred until expiration of the exclusivity for the '227 patent.

8. According to the material contained in the Administrative Record filed by FDA with this Court, Ranbaxy was the first ANDA applicant to seek approval to market pravastatin sodium 80 mg containing paragraph IV certifications to the '447 and '589 patents and to provide the required notice to the innovator.

9. According to the material contained in the Administrative Record filed by FDA with this Court, Teva Pharmaceuticals, USA, Inc ("Teva") filed the first ANDA containing a paragraph IV

3

certification for pravastatin sodium 10 mg, 20 mg, and 40 mg containing paragraph IV certifications to the '447 and '589 patents.

10. Because Ranbaxy was the first to file an ANDA for pravastatin sodium 80 mg and to provide the required notice to the innovator, Ranbaxy believes it is entitled to 180-day exclusivity for this strength and is prepared to begin to market pravastatin sodium tablets 80 mg immediately following the expiration of the '227 patent on April 20, 2006.

Effect of denying Ranbaxy's entitlement to exclusivity.

11. Ranbaxy will be harmed if its 180-day exclusivity is denied following the expiration of BMS' '227 patent.

12. According to BMS' 2004 Annual Report, sales of Pravachol in the United States in 2004 were $1.4 billion. Ranbaxy projects that, if it is awarded exclusivity it will achieve 15 to 20 million dollars of pravastatin sodium sales during the first six months of marketing. This estimate is based on the market share exhibited in other products launched by Ranbaxy.

13. Based on its expectation, following this Court's previous decision, that it would be awarded exclusivity for pravastatin sodium 80 mg, Ranbaxy has manufactured the drug in quantities projected to be sufficient to satisfy market demand based on the assumption that it will be the only generic competitor.

14. If Ranbaxy is denied the exclusivity to which it is entitled, it will also lose the opportunity to become the most visible generic entrant and to forge early relationships with customers, which will provide benefit even beyond the exclusivity period. As this Court has observed, "the earliest generic drug manufacturer in a specific market has a distinct advantage over later entrants." Mova v. Shalala, 955 F. Supp. 128, 131 (D.D.C. 1997), aff'd 140 F.3d 1060 (D.C. Cir. 1998).

15. If Ranbaxy were to be deprived of the 180 day period of exclusivity to which it is entitled for the pravastatin sodium 80 mg tablets following expiration of the '227 patent, Ranbaxy would be deprived of millions in projected profits over the first six months of marketing, despite the millions of dollars in development costs Ranbaxy incurred preparing for distribution of pravastatin sodium 80 mg.

Ranbaxy's interest is distinct from Teva's.

16. Ranbaxy and Teva have different commercial interests, as each will seek to maximize its share of the market for pravastatin sodium tablets. How Teva will seek to do so will likely depend on facts that are unique to its situation. Most critically, during the 180-day exclusivity Teva will be able to maket only 10 mg, 20 mg and 40 mg tablets, but not 80 mg tablets. Ranbaxy will be able to market only 80 mg tablets. For these reasons, Teva's participation in this litigation is inadequate to represent Ranbaxy's interests.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of April 2006.

Jayadeep R. Deshmukh