IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| APOTEX INC. | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 06-627 (JDB) |
| FOOD AND DRUG ADMINISTRATION, *et al.* | ) ) ) |
| Defendants. | ) ) |

## DECLARATION OF DR. BERNARD C. SHERMAN

I, DR. BERNARD C. SHERMAN, Ph.D., declare as follows:

1. I am the founder, Chairman and Chief Executive Officer of Apotex Inc. ("Apotex"), a Canadian-based pharmaceutical company that develops and manufactures generic drug products.

2. I have personal knowledge of the facts set forth herein, or believe them to be true based on my experience in the pharmaceutical industry and information I have received in the course of my duties, and am competent to testify to the same.

3. I submit this Declaration in support of Apotex's motion for temporary restraining order and/or preliminary injunction.

4. Apotex has filed with the U.S. Food and Drug Administration ("FDA") an abbreviated new drug application ("ANDA") for generic pravastatin sodium tablets—a drug product currently marketed solely by Bristol-Myers Squibb ("BMS") under the brand-name Pravachol®.

5. To date, Apotex's research and development costs incurred in developing and testing its generic pravastatin product, as well as compiling the information required to submit an ANDA, exceed $5 million.

6. As part of its development efforts, Apotex also invested over $100 million in a fermentation facility, built to manufacture the active pharmaceutical ingredients ("API") used in Apotex's finished dosage forms, including, primarily, pravastatin API. In fact, Apotex's fermentation facility currently manufactures solely pravastatin API.

7. On June 28, 2005, Apotex learned that FDA had determined that no ANDA applicant for generic pravastatin tablets would be entitled to 180-day exclusivity on the grounds that such exclusivity had been triggered by the July 23, 2004 dismissal order entered in Apotex's declaratory judgment suit against BMS, and that such exclusivity had expired. As such, FDA determined that Apotex, and all otherwise approvable ANDA applicants for pravastatin sodium tablets, would be eligible for final approval as of April 20, 2006, upon expiration of the pediatric exclusivity associated with the basic patent covering BMS's pravastatin products.

8. In reliance on FDA's June 28, 2005 administrative ruling, Apotex has manufactured over 2000 kilograms of pravastatin API, with an estimated worth of over $6 million, in preparation for an April 20, 2006 commercial launch of its generic pravastatin product. Thus, Apotex's total development and manufacturing costs for its pravastatin products exceed $11 million to date, not including Apotex's investment of over $100 million in its fermentation facility, built to manufacture primarily pravastatin API.

9. It is my understanding that, on April 11, 2006, FDA changed its position with respect to the 180-day exclusivity associated with pravastatin sodium tablets, and has determined that one or more ANDA applicants, presumably including Teva and Ranbaxy, are entitled to

180-day exclusivity for pravastatin sodium tablets. As such, final approval of Apotex's pravastatin ANDA will be delayed for 180 days after such first-filers launch their pravastatin products. If that happens, Apotex will suffer substantial and irreparable harm, absent injunctive relief from this Court.

10. It is my understanding that, if Teva and Ranbaxy are allowed to launch with six months exclusivity prior to all subsequent applicants, Apotex projects that it will earn no more than about $600,000 in the first 12 months of generic pravastatin competition.

11. In the event that Apotex is forced to launch six months after Teva and Ranbaxy, Apotex will not recoup the substantial development, API, and investment costs associated with its pravastatin products. As the first companies to launch, Teva and Ranbaxy will have access to, and enter into long-term contracts with, customers with whom Apotex would otherwise have contracted, thereby foreclosing Apotex from effectively competing in the pravastatin market even *after* Teva's and Ranbaxy's period of exclusivity expires. This is true even if Apotex ultimately prevails on the merits of this dispute. It is my understanding that such losses are unrecoverable from FDA. A company of Apotex's size cannot bear losses of this magnitude and remain competitive in the U.S. market.

12. Apotex relied to its detriment on FDA's triggering Apotex's 180-day exclusivity for ticlopidine based on the dismissal of Teva's declaratory judgment action against Syntex. But for this agency action, Apotex would not have so heavily invested in manufacturing pravastatin API in preparation for an April 20, 2006 launch.

13. The foregoing facts are true and correct as I verify and believe.

Dated this 14th day of April, 2006.

I, DR. BERNARD C. SHERMAN, hereby declare, under penalty of perjury under 28 U.S.C. § 1746 and the laws of the United States of America, that the foregoing Declaration is true and correct.

_____
DR. BERNARD C. SHERMAN