# EXHIBIT F

# Declaration of Arthur Y. Tsien

*In support of Apotex Inc.'s Motion For
Temporary Restraining Order and/or Preliminary Injunction*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TEVA PHARMACEUTICALS USA, INC., )
)
        Plaintiff, )
)
v. )
)   Case No. 99-67 (CKK)
THE UNITED STATES FOOD AND DRUG )
    ADMINISTRATION, ET AL., )
)
        Defendants. )
)

## DECLARATION OF DOUGLAS SPORN

I, Douglas Sporn, declare:

1. I am currently the Director of the Office of Generic Drugs (OGD), Center for Drug Evaluation and Research (CDER), U.S. Food and Drug Administration (FDA). I have held this position for three of the twenty-nine years that I have been employed at FDA.

2. I received a Bachelor of Arts in mathematics from the University of Texas and a Masters in Business Administration from Texas Christian University. I also was a Senior Fellow at the Kennedy School of Government, Harvard University, for one semester. I am a graduate of the Federal Executive Institute, a federal government training program for individuals in the Senior Executive Service.

3. Prior to serving as Director of OGD, I was Deputy Director of the Office of Pharmaceutical Science, CDER, and Acting Director of OGD, CDER. Prior to that, I served as Director of FDA's Planning Staff in the Office of Planning and Evaluation (OPE), Office of the Commissioner, where I directed FDA's

strategic planning process and undertook studies requested by the FDA Commissioner. I also served as Director of the Evaluation Staff, OPE, where I oversaw evaluations of a variety of FDA regulatory activities and products, including regulation of blood banks, drug quality assurance programs, and *in vitro* diagnostic products. During this period I was also a consultant to the World Health Organization and the Pan American Health Organization, where I used program evaluation techniques to improve management of food safety programs. I also have held positions in the Center for Devices and Radiological Health, FDA, the Department of Veterans Affairs, and the defense industry.

4. For the past three years, I have overseen and managed OGD, the office responsible for reviewing and approving Abbreviated New Drug Applications (ANDAs) for generic drugs submitted to FDA. In the regular course of my duties, I help ensure that reviews of ANDAs are performed in a scientifically sound and timely manner so that high quality, low cost drugs are available to the American public. I help ensure that all ANDA applicants are treated in a fair, open manner. I also formulate and communicate scientific and regulatory policies applicable to generic drug products and the industry that manufacturers them.

5. OGD employs a staff of 129 chemists, microbiologists, pharmacists, biopharmaceutic experts, physicians, and support personnel engaged in the premarket, scientific, and regulatory review of ANDAs. The staff is also responsible for scientific

review of proposed postmarket changes to generic drug products. The review of ANDAs includes but is not limited to:

-- careful examination of the chemistry, manufacturing, and controls proposed for the product;

-- careful assessment of proposed labeling to ensure that it conforms to that of the Referenced Listed Drug;

-- evaluation of bioequivalence test data to ensure that the generic product will perform in the same manner as the Reference Listed Drug.

6. Each ANDA applicant must include, as part of its aprlication, a certification relating to the patents that cover the innovator drug to which the generic drug compares. Specifically, an ANDA applicant must certify: (I) that patent information relating to the innovator drug has not been filed with FDA; (II) that patents covering the innovator drug have expired; (III) the date on which patents covering the innovator drug will expire; or (IV) that patents covering the innovator drug are invalid, unenforceable, or will not be infringed by the generic drug. 21 U.S.C. § 355(j)(2)(A)(vii); 21 C.F.R. § 314.94(a)(12)(i)(A)(4). The final type of patent certification is known as a "paragraph IV" certification.

7. A court decision arising out of a paragraph IV certification holding a patent covering an innovator drug invalid, unenforceable, or not infringed may trigger the start of a 180-day exclusivity period for the first generic drug applicant whose

ANDA contains a paragraph IV certification. Thus, an ANDA applicant who obtains such a court decision is directed by 21 C.F.R. § 314.107(e)(2)(iv) to submit to OGD a copy of the order or judgment holding the patent invalid, unenforceable, or not infringed. OGD staff, in consultation with FDA lawyers, reviews these court orders or judgments to confirm whether the patent has been found invalid, unenforceable or not infringed. OGD staff does not review pleadings, transcripts, or exhibits from the patent litigation, correspondence between the patent holder and the ANDA applicant, or patent law in making these ministerial determinations, consistent with the regulation 21 C.F.R. § 314.107(e)(2)(iv).

8. I am familiar with the case <u>Teva Pharmaceuticals USA, Inc. v. FDA, et al.</u>, where Teva challenged FDA's decision regarding final approval of Teva's ticlopidine drug product.

9. On or about August 21, 1998, Teva informed OGD that its patent declaratory judgment action against Syntex in the Northern District of California was dismissed by the court on August 14, 1998, for lack of subject matter jurisdiction. Teva submitted to OGD documents from the litigation, including the court's order, pleadings, transcripts of court proceedings, and correspondence between the parties. Teva argued that the California court's dismissal should be considered a court decision holding the Syntex patent invalid, unenforceable, or not infringed, within the meaning of 21 U.S.C. § 355(j)(5)(B)(iv)(II), and thus trigger

the start of the 180-day exclusivity period for TorPharm, the first paragraph IV ANDA applicant for ticlopidine.

10. OGD declined to adopt Teva's interpretation of the court decision trigger in part because of the Court of Appeals' decision in <u>Mova Pharmaceutical Corp. v. Shalala</u>, 140 F.3d 1060 (D.C. Cir. 1998). Given the Court's language that FDA could adopt Teva's interpretation through rulemaking, it is probable that industry expectation is that if FDA were to adopt this interpretation, it would do so only through rulemaking.

11. In addition, OGD declined to adopt Teva's interpretation of the court decision trigger in part because the reason for the California court's dismissal of the case was not evident from the face of the court order, and the court did not issue a memorandum opinion explaining the basis for the order. The court order stated that the declaratory judgment action was dismissed because: 1) Teva lacked a reasonable apprehension of suit by Syntex for infringement of the '592 patent; 2) there was no justiciable case or controversy; and 3) the court lacked subject matter jurisdiction. The court order did not discuss the status of the patents at issue in the declaratory judgment action.

12. To assess the status of the patent at issue in that case, OGD would have had to review pleadings, including briefs, exhibits, proposed orders, and patent law, as well as correspondence between the parties and court transcripts.

13. Review and analysis of the legal documents submitted by Teva

would require OGD to follow a similar course in future cases. If OGD were to accept that a dismissal of a declaratory judgment action satisfies the court decision trigger, I believe that ANDA applicants would seek to have OGD make similar determinations concerning dismissals of non-declaratory judgment cases. These cases are far more numerous and may require analysis of documents other than court orders or decisions, which could place an unbearable burden upon OGD staff and would require a substantial use of OGD's limited resources. Also, OGD lacks the expertise to make accurate determinations about the legal effect, such as estoppel, of representations relating to patents that are not embodied in a court decision.

14. If OGD adopted Teva's interpretation of the statute, it may be required to review court documents for all types of dismissals. Because of OGD's lack of expertise in this area and the substantial resource drain entailed by such an undertaking, I decided that FDA would not adopt the interpretation of the court decision trigger proposed by Teva.