# EXHIBIT G

# Declaration of Arthur Y. Tsien

*In support of Apotex Inc.'s Motion For*
*Temporary Restraining Order and/or Preliminary Injunction*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TEVA PHARMACEUTICALS USA, INC.,       )
                                      )
                    Plaintiff,        )
                                      )
         v.                           )      Civ. No. 99-67 (CKK)
                                      )
THE UNITED STATES FOOD AND            )
    DRUG ADMINISTRATION, and          )      FILED
    DONNA E. SHALALA, Secretary       )
    of Health and Human Services,     )      AUG 0 2 1999
                                      )
                    Defendants.       )      NANCY ... U.S. DISTRICT COURT
_____)

MEMORANDUM IN OPPOSITION TO TEVA'S
RENEWED APPLICATION FOR A TEMPORARY
RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION

INTRODUCTION

Although the Court of Appeals reversed this Court's ruling
on Teva's application for preliminary relief, that Court did not,
contrary to Teva's argument, "conclude" that Teva is likely to
succeed on the merits, nor did the Court of Appeals reject FDA's
interpretation of the court decision trigger. See Teva Br. at 3-
5. The primary basis of the Court of Appeals' decision was that
FDA had not adequately explained its decision not to adopt Teva's
interpretation: "[O]ur decision . . . rests on the FDA's failure
to explain adequately its refusal to treat the California
dismissal as a triggering 'court decision.'" Teva
Pharmaceuticals USA. Inc. v. FDA, 1999 WL 506959 *9 (D.C. Cir.
July 20, 1999). The Court of Appeals remanded for this Court to
"consider anew the request for injunctive relief," meaning that
this Court will reconsider all four prongs of the preliminary
injunction analysis, in light of FDA's explanation. Id. at *10.

36

Nor, contrary to Teva's assertion, did the Court of Appeals "rule" that the California dismissal was a "holding" under 21 U.S.C. § 355(j)(5)(B)(iv)(II). It is likely that the Court would not so "rule" without distinguishing its discussion of this very issue in Mova Pharmaceutical Corp. v. Shalala, 140 F.3d 1060 (D.C. Cir. 1998). In Mova, the Court described two ways that the result sought by Teva might be achieved: FDA might produce this result "by regulation;" or the Federal Circuit might re-interpret the "case or controversy" requirement in for purposes of § 355(j)(5)(B)(iv)(II). Id. at 1073 n.18.

In light of the Court of Appeals' opinion, FDA has explained its decision. That explanation is a permissible interpretation of the statute, is entitled to deference, and must be affirmed. As explained in the attached declaration of Douglas Sporn, attached at Tab A, the Director of FDA's Office of Generic Drugs, the primary reason that FDA does not follow the interpretation urged by Teva is that it would require FDA to analyze, under principles of patent law, the patent-law ramifications of court decisions when those ramifications are not apparent on the face of the order or judgment. This would require FDA to make determinations regarding private patent litigation by analysis of, among other things, Federal Circuit case law on complex patent issues. FDA does not have the resources nor the expertise to do so. In fact, interpreting the same statutory provision at issue in this case, this Court recently rejected a similar attempt to impose such a burden on FDA. Apotex. Inc. v. Shalala,

- 2 -

timely, scientific review of product applications.  Id.; see also
59 Fed. Reg. at 50,343.

Perhaps even more significant, FDA would have to make
determinations about complex patent law issues, such as estoppel,
beyond FDA's area of expertise.  See Sporn Declaration; see also
59 Fed. Reg. at 50,343.  This is precisely the type of analysis
the Court of Appeals had to undertake in this case.  Indeed, the
Court had to analyze the issue of estoppel in the context of
patent cases decided by the Federal Circuit.  See Teva, 1999 WL
506959 at *6, discussing Super Sack Mfg. Corp. v. Chase Packaging
Corp., 57 F.3d 1054 (Fed. Cir. 1995); Spectronics Corp. v. H.B.
Fuller Co., 940 F.2d 631 (Fed. Cir. 1991); Fina Research S.A. v.
Baroid Ltd., 141 F.3d 1479 (Fed. Cir. 1998).

Teva's position would require FDA to undertake this type of
analysis in future cases.  As Super Sack, Fina, and Spectronics
illustrate, there are a number of reasons for a court to
determine that a declaratory judgment plaintiff has no reasonable
apprehension of being sued, and the reasons are wrapped up in the
intricacies of patent law.  Lacking patent expertise, FDA is not
in a position to make a decision on the effect of dismissals on
possible future patent litigation.

For example, under Federal Circuit case law, equitable
estoppel may apply where some misleading conduct on the part of
the patent owner leads the alleged infringer to rely on the
conduct and infer that its activity does not infringe the patent.
See, e.g., A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960

- 5 -

F.2d 1020, 1041 (Fed. Cir. 1992) (en banc). Under Teva's
approach, FDA could be called upon to analyze whether the patent
owner's behavior has in fact estopped it from later bringing a
patent infringement suit.

Hence, FDA decided not to adopt Teva's interpretation in
large part because FDA is not required to make such patent
determinations, and such an approach would be difficult to
undertake and would result in poor use of FDA's scarce resources.
In addition, all that is contemplated under FDA's regulation is a
review of the "the order or judgment" of the court hearing the
patent case. 21 C.F.R. § 314.107(e)(2)(iv).

This Court recently rejected another attempt to impose a
similar burden on FDA. In Apotex, Inc. v. Shalala, see Tab B,
plaintiff argued that prior patent litigation about whether a
patent was infringed by two prescription strengths of ranitidine
was applicable to whether the same patent was infringed by a
different strength over-the-counter ranitidine product. If the
prior patent litigation had been so applied, it would have
precluded the separate 180-day exclusivity period for the over-
the-counter product, and would have required FDA to analyze the
ramifications of the prior patent litigation on the OTC strength.
The Court rejected this attempt. See Slip Op. at 24.

A.   FDA's DECISION IS CONSISTENT WITH THE GRANUTEC DECISION

The Court of Appeals questioned whether FDA's decision with
respect to Teva's ticlopidine product was consistent with its
decision in another case, Granutec v. Shalala, 1998 WL 153410

(4th Cir. April 3, 1998) (unpublished decision). See <u>Teva</u>, 1999
WL 506959 at *8.  In <u>Granutec</u>, the Court of Appeals for the
Fourth Circuit considered the 180-day exclusivity period for the
generic version of Glaxo's ranitidine drug product, Zantac.  In
the first "court decision" concerning the ranitidine patent, the
District Court for the District of Connecticut granted partial
summary judgment for Boehringer Ingelheim in its patent
infringement case with Glaxo.  See Memorandum Decision and
Judgment, attached at Tab C; see also <u>Glaxo, Inc. v. Boehringer
Ingelheim Corp.</u>, 954 F. Supp. 469, 471 (D. Conn. 1996).  This
ruling on summary judgement was the "court decision" at issue in
<u>Granutec</u>.  In the case before this Court, in contrast, Teva's
patent action against Syntex was dismissed for lack of subject
matter jurisdiction.

The <u>Boehringer</u> summary judgment decision is distinguishable
from the California court's dismissal for lack of subject matter
jurisdiction.  First, the <u>Boehringer</u> summary judgment is a
decision on the merits of the case.  The <u>Boehringer</u> decision
concluded that defendant Boehringer, sued for patent infringement
by Glaxo, was entitled to judgment <u>as a matter of law</u> on the
issue of its alleged infringement of Glaxo's patent.  See Fed. R.
Civ. P. 56.

Teva's dismissal for lack of subject matter jurisdiction, in
contrast, did not reach the actual merits of the case.  As the
Supreme Court recently stated, "'Without jurisdiction the court
cannot proceed at all in any cause.  Jurisdiction is power to

- 7 -

declare the law, and when it ceases to exist, the only function
remaining to the court is that of announcing the fact and
dismissing the cause.'" Steel Co. v. Citizens For A Better
Environment, 118 S. Ct. 1003, 1012 (1998) (citing Ex parte
McCardle, 7 Wall. 506, 514 (1868)).

The Court of Appeals for the District of Columbia Circuit
has held that "federal courts are powerless to decide any matter
unless it involves a case or controversy." Federal Express Corp.
v. Air Line Pilots Ass'n, 67 F.3d 961, 963 (D.C. Cir. 1995)
(citing U.S. Const. art. III, § 2). The case or controversy
requirement "is no less strict when a party is seeking a
declaratory judgment than for any other relief." Id. Where no
case or controversy exists, as with the California declaratory
judgment dismissal, a court cannot make a "decision" on patent
infringement. This principle guided FDA when it determined that
the Granite summary judgment decision is distinguishable from the
California court's dismissal for lack of subject matter
jurisdiction.

Second, because the California court did not have the power
to reach the merits of the patent case, its dismissal is not a
"holding" that the patent was invalid, not infringed, or
unenforceable. 21 U.S.C. § 355(j)(5)(B)(iv)(II); 21 C.F.R. §
314.94(a)(12)(i)(A)(4). A "holding" is defined as "[t]he legal
principle to be drawn from the opinion (decision) of the court."
Black's Law Dictionary (6th ed. 1991). The legal principle to be
drawn from the California court's dismissal was that no subject

- 8 -

matter jurisdiction existed.  The legal principle to be drawn from the Boehringer decision, in contrast, was that Boehringer was entitled to judgment on the patent infringement issue as a matter of law.

Third, the court decision trigger discusses a specific type of holding: that the patent is invalid, unenforceable, or not infringed.  21 U.S.C. § 355(j)(5)(B)(iv)(II); 21 C.F.R. § 314.94(a)(12)(i)(A)(4).  Because the California dismissal did not address the merits of the case, FDA determined from the order of dismissal that there was no "holding" relating to the patent.

Finally, in contrast to the Boehringer memorandum opinion, any concessions of noninfringement made by Syntex were not evident on the face of the California court's order dismissing the case.  As evident on the face of the Boehringer court's memorandum decision, there was a finding that defendants' product did not infringe its patents.  The California court's order did not make such a finding.[2/]  See Order Dismissing Complaint for Declaratory Judgment, attached at Tab D.

Thus, in reviewing the Boehringer decision, FDA could readily determine that there was a court decision, on the merits, holding the Glaxo patent not infringed by Boehringer.  The

---

[2/]The Court of Appeals' argument regarding unenforceability, Teva, 1999 WL 506959 at *7, does not address the issue of how FDA determines whether the patent is unenforceable -- through review of a court order or through assessment of the preclusive effect of the unenforceability.  Triggering exclusivity because the patent is unenforceable still requires a decision holding the patent unenforceable.

California court's order was not such a holding.  Assessment of
the patent infringement issues before the California court would
have required FDA to review materials other than the order of the
court, and also Federal Circuit case law regarding estoppel
between private parties as it relates to patents.  Such an
analysis is beyond FDA's area of expertise.  See Sporn
Declaration; see also 59 Fed. Reg. at 50,343 ("As stated
elsewhere in this final rule, FDA does not have the expertise to
review patent information.  The agency believes that its scarce
resources would be better utilized in reviewing applications
rather than reviewing patent claims.").

     B.   FDA'S DECISION IS REASONABLE AND CONSISTENT
          WITH THE COURT OF APPEALS' DECISION IN MOVA

FDA's decision not to adopt Teva's interpretation of the
court decision trigger was due, in large part, to the Court of
Appeals' decision in Mova Pharmaceutical Corp. v. Shalala, 140
F.3d 1060 (D.C. Cir. 1998).  See Sporn Declaration.  The Mova
court addressed the very issue presented by Teva:  the effect of
dismissals of declaratory judgment actions for lack of case or
controversy.  The Court recognized that a case dismissed for lack
of a case or controversy would not automatically be a "holding"
under § 355(j)(5)(B)(iv)(II).  Mova, 140 F.3d at 1073 & n.18.[2/]

As a way to deal with this problem, the Court suggested that
FDA could bypass the Federal Circuit case law by issuing a

---

     [2/] Similarly, the Court of Appeals in Purepac Pharmaceutical
Co. v. Friedman, 162 F.3d 1201, 1205 n.6 (D.C. Cir. 1998),
recognized that a settlement would not be a holding under §
355(j)(5)(B)(iv)(II).

post-Mova 180-day exclusivity, stating that, pending rulemaking, it will "regulate directly from the statute." Guidance for Industry, 180-Day Generic Drug Exclusivity 4 (June 1998); 63 Fed. Reg. 37,890 (July 14, 1998). In this case, FDA adopted the interpretation that is most clearly supported by the plain language of the statute.

The Court of Appeals criticized FDA's interpretation of the court decision trigger because it delayed the entry of generic versions of ticlopidine onto the market. Teva, 1999 WL 506959 at *9. FDA certainly agrees that one of the overarching purposes of the Hatch-Waxman amendments is "to make available more low cost generic drugs." See H.R. Rep. No. 857 (Part I), 98th Cong., 2d Sess. 14 (1984), reprinted in 1984 U.S.C.C.A.N. 2647, 2647. However, the Mova Court, in reviewing FDA's successful defense requirement, refused to allow this purpose to override the statutory text of Hatch-Waxman, even when the potential for delay existed. See Mova, 140 F.3d at 1072. In fact, the Mova Court provided another view of Hatch-Waxman, stating that it might very well have been Congress' intent "to reward the first ANDA applicant for his enterprise whether or not he is later sued . . . ." Id. at 1071 n.11. Similarly, the Court of Appeals in Purepac recognized that the result in that case might lead to no generic approvals at all. Purepac, 162 F.3d at 1205. Thus, consistent with Mova and Purepac, FDA's decision in this case preserved the 180-day exclusivity period for TorPharm, the first paragraph IV ANDA applicant.