# EXHIBIT J

# Declaration of Arthur Y. Tsien

*In support of Apotex Inc.'s Motion For Temporary Restraining Order and/or Preliminary Injunction*

ORAL ARGUMENT UNSCHEDULED

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

No. 99-5022

---

TEVA PHARMACEUTICALS USA, INC.,
Plaintiff/Appellant

v.

UNITED STATES FOOD AND DRUG ADMINISTRATION, et al.,
Defendant/Appellees.

---

APPEAL FROM DENIAL OF PRELIMINARY INJUNCTIVE RELIEF BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

---

BRIEF OF APPELLANT
TEVA PHARMACEUTICALS USA, INC.

---

James N. Czaban
Geoffrey M. Levitt
David M. Malone (Counsel of Record)

VENABLE, BAETJER, HOWARD & CIVILETTI, LLP
1201 New York Avenue, NW
Suite 1000
Washington, D.C. 20005-3917
202/962-4800

ATTORNEYS FOR APPELLANT
TEVA PHARMACEUTICALS USA, INC.

market its version of the drug. See Mova, 140 F.3d at 1072 n.14. Each of these scenarios prevents both the Commercial Marketing Trigger and the Court Decision Trigger (in a Paragraph IV Infringement Action against the first applicant) from operating. In addition, there are several scenarios in which a subsequent applicant, such as Teva here, may not want to wait for the previous applicant to trigger the start of the 180-Day Delay Period. For example, as in this case, the first applicant's ANDA may encounter prolonged difficulties in obtaining FDA approval. Or, a subsequent applicant may have done a much better job at producing a non-infringing product than the first applicant, so that the subsequent applicant is not sued, while the first applicant is subject to the 30-month approval stay, 21 U.S.C. § 355(j)(5)(B)(iii), and thus cannot market for the foreseeable future. As this court noted in Mova, the Hatch-Waxman Declaratory Judgment Action "provides a particularly appropriate solution in cases in which the second applicant has done a better job of designing around the pioneer drug manufacturer's patent than the first did." 140 F.3d at 1073. FDA's interpretation would nullify that solution.

**2. FDA's Interpretation Allows Holders Of Invalid, Unenforceable, Or Non-Infringed Patents To Thwart The Statutory Mechanisms Congress Created To Expedite Generic Market Entry**

The statute clearly contemplates that the Hatch-Waxman Declaratory Judgment Action will operate for the benefit of subsequent Paragraph IV ANDA applicants. Congress intended such applicants to be able to trigger the start of the 180-Day Delay Period if they can show that the patent holder is unable to enforce its patent rights against the applicant. 21 U.S.C. § 355(j)(5)(B)(iii)-(iv); Mova 140 F.3d at 1073 (noting that a

subsequent ANDA applicant "can bring its own declaratory judgment action against the patent holder, and, if the [subsequent] applicant prevails, the Court Decision Trigger will be satisfied and it will be allowed to market its product"). By allowing patent holders unilaterally to defeat ANDA applicants' ability to use this statutory procedure, FDA's interpretation turns the Court Decision Trigger into a tool benefiting patent holders against ANDA applicants, precisely contrary to the statutory intent.

It is even more obvious that Congress could not have endorsed FDA's current approach when one considers that this approach not only transfers the benefits of the Court Decision Trigger in declaratory judgment actions from ANDA applicants (the intended beneficiary class) to patent holders, but allows that benefit to go nearly exclusively to holders of invalid, unenforceable, or non-infringed patents - the very types of patents the entire Paragraph IV ANDA scheme is designed to defeat. Those patent holders who have a legitimate basis to refute the ANDA applicant's claim of invalidity, unenforceability, or non-infringement will invariably file a Paragraph IV Infringement Action within 45 days - precluding a separate Hatch-Waxman Declaratory Judgment Action - because the mere filing of such an infringement action imposes an automatic 30-month statutory injunction against FDA approval of the ANDA, see 21 U.S.C. § 355(j)(5)(B)(iii), and because a victory ensures that the patent holder will not face competition from the generic applicant for the life of the patent. 21 U.S.C. § 355(j)(5)(B)(iii)(II). Thus, for Paragraph IV ANDAs where there is at least a colorable basis to bring a Paragraph IV Infringement Action, the Declaratory Judgment Action Trigger typically will not come into play. It will be a key factor, however, when ANDA applicants identify and challenge highly vulnerable patents, such as happened with

ticlopidine. But, if FDA's interpretation stands, it will enable holders of such patents to effectively postpone generic competition, perhaps even for the life of the patent. And, most absurdly of all, such a patent holder could effectively extend its patent by expressly acknowledging that the patent would not be infringed and will not be enforced!

The district court itself acknowledged the absurdity of FDA's interpretation, but failed to properly apply that conclusion under Chevron. As the court noted, FDA's interpretation "gives the patent holder the ability to artificially extend its period of market exclusivity by manipulating the Court Decision Trigger, by choosing not to sue the ANDA applicant and then stipulating that it will not sue any ANDA applicant that brings a declaratory judgment action." Mem. Op. at 12 (emphasis added), JA 159. Whatever the district court may have believed to be the Congressional intent, its (quite accurate) description of the effects of FDA's interpretation are inconsistent with the conclusion that FDA's interpretation is reasonable. See Chevron, 467 U.S. at 845.

**C. It Is Reasonable And Necessary To Interpret The Dismissal of Teva's Declaratory Judgment Action As Triggering The Start Of The 180-Day Delay Period Applicable To Effective Approval Of Teva's ANDA**

**1. Recognizing The Dismissal Of Teva's Declaratory Judgment Action As Triggering The Start Of The 180-Day Delay Period Is Consistent With The Structure And Purpose Of The 1984 Amendments**

A key component of the Hatch-Waxman Amendments is the deliberate Congressional decision to ensure that the federal courts would exercise jurisdiction to decide the substantive patent issues involved in Paragraph IV challenges. Congress's intent was to ensure that the courts would not refuse to decide cases arising out of Paragraph IV challenges on "case or controversy" grounds because the issue for decision