IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC. | ) |
| Plaintiff, | ) |
| v. | ) Case No. 05-1469 (JDB) |
| FOOD AND DRUG ADMINISTRATION, *et al.*, | ) |
| Defendants, | ) |
| APOTEX INC. | ) |
| Intervenor-Defendant. | ) |

## MEMORANDUM IN SUPPORT OF APOTEX INC.'S
## MOTION FOR INJUNCTIVE RELIEF PENDING APPEAL

### INTRODUCTION

On October 21, 2005, this Court entered a final Order and Memorandum Opinion finding the Food and Drug Administration's June 28, 2005 administrative ruling relating to 180-day exclusivity for pravastatin tablets arbitrary and capricious; overruling FDA's determination that a dismissal order entered in Apotex Inc.'s declaratory judgment action against Bristol-Myers Squibb ("BMS") triggered all eligible ANDA applicants' 180-day exclusivity for pravastatin; and awarding Teva Pharmaceuticals USA, Inc.'s motion for permanent injunctive relief. Apotex appealed the Court's judgment on October 24, 2005, and has moved to expedite consideration and resolution of the appeal in the D.C. Circuit. Apotex now respectfully seeks injunctive relief

### B.   Apotex Will Suffer Substantial Irreparable Harm If Injunctive Relief Is Withheld.

If this Court does not grant a stay, Teva will be free to launch its pravastatin products with an unlawful period of 180-day exclusivity and, as a result, gain a strangle-hold over the market.  Indeed, Teva has publicly announced its intent to launch immediately upon expiration of the '227 patent in April 2006. (Rakoczy Decl. Ex. O.) Once Teva launches, it has the ability to tie up distribution channels and access to customers; enter into long-term sales agreements; increase sales across all product lines; and retain greater market share in the long-term. (McIntire Decl. ¶¶ 4, 15, 19.) Apotex, on the other hand, will lose the opportunity to effectively compete in the pravastatin market. (*Id.* ¶¶ 17-19.)

Apotex conservatively estimates that an unwarranted 180-day head start for Teva would result in over $12.5 million in lost sales for Apotex in the first year alone. (McIntire Decl. ¶¶ 17, 20-21.) Even if Apotex were to prevail on appeal, the harm will have been done—Apotex will never recover those lost revenues, profits, and market share. (*Id.* ¶¶ 14, 18.) In addition, Apotex would suffer unquantifiable, intangible losses for pravastatin and other product lines. Apotex, for example, would lose critical access to major customers and the opportunity for long-term contracts. (*Id.* ¶¶ 5, 19.) These losses, in turn, would adversely affect Apotex's sales opportunities across all of its product lines. (*Id.* ¶¶ 5, 20.) Such lost opportunities will continue to harm Apotex long after Teva's exclusivity expires. (*Id.* ¶¶ 6, 19-20.) Such losses are irreparable in every sense of the term. See *Teva*, 182 F.3d at 1011 n.8 (D.C. Cir. 1999). Indeed, the D.C. Circuit so found when granting a stay in the *Apotex* appeal. (*See* Rakoczy Decl. Ex. A.)

In *Apotex*, appellant Apotex sought a stay, arguing that it would suffer irreparable harm absent such relief. (*See* Rakoczy Decl. Ex. P at 18-19.) That appeal, too, involved the question of whether a competing ANDA-filer's 180-day exclusivity had been triggered and

17