UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| APOTEX INC.,<br><br>Plaintiff,<br><br>v.<br><br>FOOD AND DRUG ADMINISTRATION,<br>MICHAEL O. LEAVITT, and<br>ANDREW VON ESCHENBACH,<br><br>Defendants,<br><br>and<br><br>TEVA PHARMACEUTICALS USA, INC.,<br><br>and<br><br>RANBAXY LABORATORIES LIMITED,<br>RANBAXY INC. and<br>RANBAXY PHARMACEUTICALS, INC.,<br><br>Intervenor-Defendants. | CIVIL NO. 1:06-CV-627 |

## SECOND DECLARATION OF JAYADEEP R. DESHMUKH

I, Jayadeep R. Deshmukh, declare as follows:

1. I am the Vice President - Intellectual Property for Ranbaxy Laboratories Limited. Ranbaxy Laboratories Limited is a publicly traded company engaged in the development, manufacturing and marketing of pharmaceuticals in the United States and worldwide. Ranbaxy Pharmaceuticals, Inc. is a wholly owned subsidiary of Ranbaxy Inc., which is ultimately a wholly owned subsidiary of Ranbaxy Laboratories Limited. Ranbaxy Inc. is the agent of Ranbaxy Laboratories Limited in the United States. Ranbaxy Laboratories Limited has dealt and

continues to deal with the United States Food and Drug Administration ("FDA") through Ranbaxy Inc. and Ranbaxy Pharmaceuticals, Inc.

2. As the Vice President - Intellectual Property for Ranbaxy Laboratories Limited, I am responsible for all intellectual property and regulatory legal aspects of Ranbaxy Laboratories Limited's pharmaceutical business in the United States and in the rest of the world. I am familiar with the marketing of drug products in general and with the marketing of generic drugs in particular. This document is based on my personal knowledge and records retained by Ranbaxy in the ordinary course of business.

3. I obtained a B.S. in Chemical Engineering in 1984 from Manipal Institute of Technology in India; an M.S. in Chemical Engineering in 1989 from Cleveland State University; and a J.D. in 1992 from Case Western Reserve University. I joined Ranbaxy Laboratories Limited in 1998. I was a patent attorney at Frost and Jacobs during 1992-1994 and Dinsmore & Shohl LLP during 1994-1998.

4. Ranbaxy Laboratories Limited manufactures and markets generic and branded generic pharmaceuticals, and active pharmaceutical ingredients. The company also is engaged in research and development of several novel drugs.

5. Pravachol (pravastatin sodium) has been approved by FDA to, among other things, reduce the risk of myocardial infarction, reduce the risk of undergoing myocardial revascularization procedures, reduce the risk of cardiovascular mortality, reduce the risk of stroke and slow the progression of coronary atherosclerosis.

6. Pravachol is one of several statin drugs indicated for the treatment of elevated cholesterol and heart disease. In 2004 two statins, atorvastatin (Lipitor) and simvastatin (Zocor)

were the two best-selling drugs in the country. For many patients, statins can be used interchangeably and cost is a factor when doctors decide which statin drug to prescribe.

7. Bristol-Myers Squibb Company ("BMS") is the holder of an approved new drug application ("NDA"), for pravastatin sodium, which it markets in 10 mg, 20 mg, 40 mg, and 80 mg tablets under the trade name Pravachol. BMS has listed four patents in the Orange Book as claiming Pravachol: U.S. Patent No. 4,346,227 ("the '227 patent"), U.S. Patent No. 5,030,447 ("the '447 patent"), U.S. Patent 5,180,589 ("the '589 patent"), and U.S. Patent No. 5,622,985 ("the '985 patent"). BMS has also been awarded pediatric exclusivity which effectively extends each patent's protection for six months following its otherwise applicable expiration date. According to FDA's Orange Book, this means that the '227 patent expires on April 20, 2006, the '447 patent and the '589 patent expire on January 9, 2009, and the '985 patent expires on October 22, 2014.

8. Ranbaxy Laboratories Limited submitted ANDA 76-413 on June 26, 2002, seeking approval to market a generic version of pravastatin sodium tablets 10 mg, 20 mg, 40 mg, and 80 mg. Ranbaxy's ANDA contained a paragraph III certification to the '227 patent, paragraph IV certifications to the '447 and '589 patents and a statement under Section 505(j)(2)(A)(viii) of the Food, Drug, and Cosmetic Act that the '985 is a method of use patent and Ranbaxy does not seek approval for the indications claimed by the '985 patent. Ranbaxy's ANDA received tentative approval on September 30, 2003. BMS did not sue Ranbaxy for patent infringement. Pursuant to FDA regulations, the tentative approval of Ranbaxy's ANDA signified that it had satisfied all requirements for approval, but that the effective date of the approval was deferred until expiration of the exclusivity for the '227 patent.

9. According to the Administrative Record, Ranbaxy was the first to file an ANDA for applicant pravastatin sodium 80 mg containing paragraph IV certifications to the '447 and '589 patents and to provide the required notice to the innovator.

10. According to the Administrative Record, Teva Pharmaceuticals, USA, Inc. ("Teva") filed the first ANDA containing a paragraph IV certification for pravastatin sodium 10 mg, 20 mg, and 40 mg containing paragraph IV certifications to the '447 and '589 patents.

11. Because FDA considers each strength of a drug a different drug, and Ranbaxy was the first to file an ANDA for pravastatin sodium 80 mg and to provide the required notice to the innovator, Ranbaxy believes it is entitled to 180-day exclusivity for this strength.

12. Ranbaxy is prepared to begin to market pravastatin sodium tablets 80 mg immediately following approval by FDA.

Harm to Ranbaxy

13. Ranbaxy will be harmed if its approval or its 180-day exclusivity is delayed following the expiration of BMS' '227 patent.

14. Ranbaxy expended approximately 3 million dollars in direct costs to develop its ANDA for pravastatin sodium. Ranbaxy also has substantial indirect costs associated with the development of its ANDA for pravastatin sodium. For example, Ranbaxy has made a considerable investment in its research and development and intellectual property capabilities to enable it to be the first to formulate non-infringing generic drugs. Ranbaxy also has invested millions in developing the fermentation capacity to manufacture pravastatin sodium and other active pharmaceutical ingredients. Thus, the total cost of developing its ANDA for pravastatin sodium far exceeds the direct costs.

15. In order to market a generic pravastatin tablet, it is necessary to first obtain the active pharmaceutical ingredient ("API"). Ranbaxy has manufactured approximately 1,800 kilograms of pravastatin sodium in anticipation of its 180-day exclusivity.

16. In order to be ready to market, it is not enough to have the active ingredient. The API must be manufactured into the finished product, packaged, labeled and arrangements made for distribution. Based on its expectation that it would be awarded exclusivity for pravastatin sodium 80 mg, Ranbaxy has manufactured, packaged and labeled several million pravastatin sodium 80 mg tablets, a quantity projected to be sufficient to satisfy market demand based on the assumption that it will receive its exclusivity for the 80 mg tablets, worth $3.9 million.

17. To take full advantage of its 180-day exclusivity, Ranbaxy has already taken steps, such as preparing its sales force and preparing new price lists, so that it will be ready to market immediately following approval.

18. According to BMS' 2005 Annual Report, sales of Pravachol in the United States in 2005 were $1.3 billion. Ranbaxy projects that, if it is awarded exclusivity, it will achieve 15 to 20 million dollars of pravastatin sodium 80 mg sales during the first six months of marketing. This estimate is based on the market share exhibited by other similarly situated products launched by Ranbaxy.

19. If Ranbaxy is denied the exclusivity to which it is entitled, and others such as Apotex also are approved, its opportunity to become the most visible generic entrant and to forge early relationships with customers, all of which will provide benefits even beyond the exclusivity period, will be diminished. As this Court has observed, "the earliest generic drug manufacturer

in a specific market has a distinct advantage over later entrants." Mova v. Shalala, 955 F. Supp. 128, 131 (D.D.C 1997), aff'd, 140 F.3d 1060 (D.C. Cir. 1998). Loss of this statutory "head start" would cause Ranbaxy irreparable injury.

20. If Ranbaxy were to be deprived of the 180 day period of exclusivity to which it is entitled for the pravastatin sodium 80 mg tablets following expiration of the '227 patent, Ranbaxy would be deprived of millions in projected profits, despite the millions of dollars in development costs Ranbaxy incurred preparing for distribution of pravastatin sodium 80 mg. Even a short delay will cause considerable harm to Ranbaxy.

21. The window of opportunity open to allow Ranbaxy to recoup its considerable investment in its pravastatin ANDA is shorter than for many other generic drugs.

22. Pravastatin and other statins are not identical, but they can be used interchangeably by many patients.[1] All statin drugs compete in the market with other statin drugs and sales of statins are price sensitive.[2] This is true of pravastatin and simvastatin. Simvastatin, marketed by Merck under the brand name Zocor, outsells brand name pravastatin (Pravachol) by nearly 4 to 1.

23. Prescriptions for a lower cost generic pravastatin are expected to increase as patients and doctors shift to generic pravastatin from the more expensive brand name simvastatin (Zocor). However, once the composition and formulation patent for Zocor expires, FDA is expected to approve qualifying ANDAs for generic simvastatin. At that point, generic pravastatin will lose its considerable price advantage over brand name simvastatin. Patients and doctors who

---

1. See Marcia Angell, M.D., The Truth About Drug Companies 80-81 (Random House, 2005) (Exh. A); Department of Veteran Affairs, Pharmacy Benefits Management Strategic Healthcare Group and the Medical Advisory Panel, "Drug Class Review: Hydroxymethylglutaryl-coenzyme A Reductase Inhibitors (statins)," Dec. 2002 (Exh. B).

2. See Consumer Reports Best Buy Drugs, Treating Elevated Cholesterol and Heart Disease: The Statins (Consumers Union 2005) (Exh. C); Scott Hensley, "Pharmaceuticals: A Looming Threat from Generics," The Wall Street Journal, Apr. 15, 2006 (Exh. D).

switched to generic pravastatin from brand name simvastatin because of its low cost can then be expected to shift back to generic simvastatin.

24. Thus, the period of time within which Ranbaxy can expect to recoup its investment is, for all practical puporses, shorter than it would be for most generic drugs. The bulk of Ranbaxy's sales of generic pravastatin, from which Ranbaxy expects to recover its considerable investment in the development and manufacture of generic pravastatin, are expected between approval and June 23, 2006. Currently, FDA has taken the position that no ANDA applicant is entitled to 180-day exclusivity once the composition and formulation patent expires on June 23, 2006. In 2005 Ranbaxy and IVAX Pharmaceuticals, which has now been acquired by Teva, challenged that decision. If the Court is unable to resolve the challenge on the merits prior to the expiration date, it is possible that the Court might enter a preliminary injunction, temporary restraining order or stay to enable it to decide the case.

25. Worse yet, the bulk drug supplier of pravastatin for BMS, Sankyo, has announced that Watson Pharmaceuticals will begin distributing a generic version of pravastatin after April 20, 2006. See Exhibit E (attached). Such a generic, referred to as an "authorized generic" because it is sold under the NDA for the branded drug, will reduce Ranbaxy's total sales of generic pravastatin.

180-Day Exclusivity

26. The promise of 180-day exclusivity is an important incentive in encouraging generic drug companies to challenge patents.

27. Developing non-infringing generic drugs is time consuming and expensive.

28. The greater the likelihood that a generic company will lose exclusvity even if it is the first filer, the less likely the company will be to try to speed its development process and be the first to challenge innovator patents.

29. Generic companies must plan far in advance of approval the quantities of drugs they will make, and allocate resources to their manufacture. Losing exclusivity after facilities and equipment have been purchased or after manufacturing has begun is costly and disruptive. For these reasons, certainty that a company's exclusivity will not change and that launch dates are known has substantial value.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of April 2006.

Jayadeep R. Deshmukh