**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| APOTEX INC. ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FOOD AND DRUG ADMINISTRATION, *et al.* ) <br> ) <br> Defendants. ) <br> ) | Case No. 06-627 (JDB) |

**REPLY MEMORANDUM IN SUPPORT OF APOTEX INC.'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

Apotex Inc. respectfully submits this brief reply in support of its motion for temporary restraining order and/or preliminary injunction. Apotex limits its reply to addressing that portion of FDA's brief dealing with Apotex's strong likelihood of success on the merits.

**I.   FDA Cannot Ignore The D.C. Circuit's Rulings In *Teva I* And *Teva II*.**

Incredibly, in opposing Apotex's motion, FDA argues that the "considerations underlying the rulings in *Teva I* and *II* are no longer controlling" (FDA Br. at 3); that its interpretation under review is a "different animal entirely" (*id.*); that *Teva III* "essentially wiped the slate clean" and rendered the D.C. Circuit's concerns from *Teva I* moot (*id.* at 16, 21); and that it does not matter "how the agency handled prior court decision trigger cases" (*id.* at 16). In other words, FDA considers itself unrestrained by any of the D.C. Circuit's concerns from *Teva I* and *II*. FDA could not be more wrong.[1]

---

[1] In its April 11, 2006 administrative decision, FDA referred to the three D.C. Circuit *Teva* decisions as *Teva I* (*Teva Pharms., USA, Inc. v. FDA*, 182 F.3d 1003 (D.C. Cir. 1999)); *Teva II* (*Teva Pharms., USA, Inc. v. FDA*, Nos. 99-5287, 99-5342, 2000 WL 1838303 (D.C. Cir. 2000)); and *Teva III* (*Teva Pharms. USA, Inc. v. FDA*, 441 F.3d 1 (D.C. Cir. 2006)). To avoid confusion, Apotex will adopt that naming convention in its reply brief.

The D.C. Circuit did not "wipe the slate clean" for FDA to adopt an interpretation without regard to that Court's previous concerns. Far from it. The *Teva III* Court, moreover, made it abundantly clear that FDA's position is not a "different animal entirely," and that the Court's concerns from *Teva I* still matter and still remain unanswered. As the Court explained:

> The FDA states that in the absence of any perceived *Teva I* constraint, it would employ a 'textual' approach to interpreting the statute, and would take the position that dismissals of declaratory judgment actions are not court decisions holding a patent invalid or not infringed. ***The agency took a similar position in Teva I but failed to provide adequate explanation. In this litigation the FDA still has not answered the questions put to it by the Teva I Court.***

441 F.3d at 5 n.5 (internal citation omitted) (emphasis added). Just as before, the D.C. Circuit still wants answers to the questions and concerns raised in *Teva I* and *II*. The legitimacy of those answers are highly relevant to the permissibility of FDA's interpretation. That the *Teva III* Court remanded the issue to the Agency does not amount to a license to ignore everything that came before it.[2]

In fact, it makes no sense for FDA to suggest otherwise where, as here, the procedural posture and facts of this case are identical to *Teva I* and *II*. In *Teva I*, the D.C. Circuit "considered the FDA's determination that a district court's dismissal of a patent declaratory judgment action for lack of subject matter jurisdiction was *not* a 'decision of a court.'" *Teva III*, 441 F.3d at 4. The same is true here. In *Teva I*, the Teva-Syntex Dismissal rendered the subject patent effectively unenforceable against Teva. Again, the same is true here. FDA concedes that

---

[2] FDA claims that it has offered a so-called "independent" interpretation in its decision letter and has not regulated directly from the statute. (FDA Br. at 1-2). In the absence of a rulemaking (which FDA has refused to undertake), all FDA can do is regulate directly from the statute. Under the circumstances, FDA has no choice but to justify its interpretation in view of both Congressional intent and purpose, as well as the D.C. Circuit's concerns in *Teva I and II*. If FDA were free to ignore the D.C. Circuit's concerns, there would be no reason for the remand in the first instance.

the BMS-Apotex Dismissal effectively renders the BMS patents unenforceable against Apotex—just as if Apotex had obtained a court decision holding the patents not infringed, invalid or unenforceable on the merits.[3] FDA further concedes that there is no material difference between the Teva-Syntex court decision trigger and the BMS-Apotex Dismissal. In determining the reasonableness of FDA's interpretation and refusal to consider the BMS-Apotex Dismissal a court decision trigger, this Court must therefore determine whether FDA has adequately answered the questions put to it by the D.C. Circuit in *Teva I* and *II*. FDA has not.

Further, Apotex has not, as FDA suggests, ignored the applicable *Chevron* standard for the permissibility of the Agency's interpretation. (FDA Br. at 5.) FDA concedes that its holding-on-the-merits interpretation of the court decision trigger—the same interpretation from *Teva I* and *II*—"is not compelled by the statutory language" and, indeed, "is narrower than the statute may be able to support." *Teva I*, 182 F.3d at 1007, 1011. As the *Teva I* Court explained, under *Chevron*, "if the FDA's interpretation of section 355(j)(5)(B)(iv)(II) is 'narrower than the statute is able to support,' then its interpretation cannot stand without justification because the FDA must interpret the statute to avoid absurd results and further congressional intent." *Id.* at 1011 (citations omitted). "It is the narrowness of the interpretation that must be justified, and the court can only review that choice of narrowness based on the reasons provided by the FDA." *Id.* (citation omitted). The Agency's answers to the *Teva I* Court's questions are therefore highly relevant to the *Chevron* analysis. Because FDA has not

---

[3] Teva merely repeats many of the same arguments it made in *Teva III*, including its assertions that the BMS-Apotex Dismissal does not have preclusive effect and that it is not a court decision because it was a stipulated dismissal. (*See* Teva Br. at 11-12 and 16-19.) As an initial matter, both FDA and this Court agreed that the BMS-Apotex Dismissal has preclusive effect. Nothing that Teva has said, or could say, changes that. Further, Teva cannot defend FDA's decision for reasons not given, considered, or contemplated by the Agency itself, which include, of course, Teva's Rule 42 arguments.

3

answered those questions, and merely has regurgitated the same answers and rationales previously rejected by the Court, FDA's interpretation is not permissible or reasonable under any standard of review.

The fact is, even under *Chevron*, "[i]n determining whether an agency's interpretation represents a reasonable accommodation of conflicting statutory purposes, a reviewing court must determine both whether the interpretation is arguably consistent with the underlying statutory scheme in a substantive sense and whether 'the agency considered the matter in a detailed and reasoned fashion.'" *Rettig v. Pension Benefit Guar. Corp.*, 744 F.2d 133, 151 (D.C. Cir. 1984) (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 845 (1984)).[4]  And, of course, courts do not "rubber stamp agency actions" under *Chevron* step two but instead must reject interpretations that are contrary to congressional intent and purpose.  *Natural Res. Def. Council, Inc. v. Daley*, 209 F.3d 747, 755 (D.C. Cir. 2000).  "FDA must interpret the statute to avoid absurd results and further congressional intent."  *Teva I*, 182 F.3d at 1011 (citations omitted).

Here, FDA cannot seriously argue that it considered the matter in a "detailed and reasoned" fashion where, as here, it simply rehashed the same arguments that failed in *Teva I* and *II*.  Indeed, the D.C. Circuit in *Teva I* rejected the same rationales that FDA is using now precisely because they were inconsistent with Congressional intent and purpose, as well as with FDA's determination in another case and the Agency's own regulation.

In sum, FDA's current position is in all material respects identical to the position rejected by the D.C. Circuit in *Teva I* and *II*.  The D.C. Circuit remanded the issue to the Agency

---

[4] *See also Abbott Labs. v. Young*, 920 F.2d 984, 988 (D.C. Cir. 1990) ("The 'reasonableness' of an agency's construction depends on the construction's 'fit' with the statutory language as well as its conformity to statutory purposes.").

4

in *Teva III* so that FDA could answer the questions and concerns from those cases.  FDA's failure to answer those question renders its interpretation unreasonable and impermissible in this case.

II.     **FDA's Interpretation Is Unreasonable And Impermissible.**

    A.     **FDA's "administrative burden rationale" does not justify its impermissibly narrow interpretation.**

FDA attempts to distinguish its current "administrative burden" rationale from that rejected in *Teva II* on the ground that *Teva II* is confined to the purportedly "unique" facts that made the "estoppel question clear in that case." (FDA Br. at 17-18.)  Wrong again.  The facts here are, admittedly, no different from *Teva II*, and FDA does not argue otherwise.  In fact, if anything, the estoppel question and determination was even clearer in this case because BMS's disavowal of any intent to sue was, unlike the Teva-Syntex Dismissal, apparent from the face of the order.  In a case involving identical facts, FDA cannot argue that the administrative burden is any greater than that which the Court rejected in *Teva II*.

Moreover, Apotex has not, as FDA suggests, missed the "larger point" that Congress intended exclusivity to be triggered by a court decision on the merits.  (FDA Br. at 17.)  The only point here is that FDA said the same thing, repeatedly, in *Teva I*, but to no avail.  On remand after *Teva I*, FDA attempted to justify this position on grounds of "administrative burden"—namely, that it would require expertise the Agency does not have, as well as looking beyond the face of the order.  *Teva Pharms. USA, Inc. v. FDA*, No. Civ.A. 99-67(CKK), 1999 WL 1042743, at *5 (D.D.C. 1999) (*Teva I Remand*).  But both the district court and the D.C. Circuit rejected this rationale.  *Teva II*, 99-5342, 2000 WL 1838303, at *2; *Teva I Remand*, 1999 WL 1042743, at *6-7.  Nothing has changed here.  FDA still has not explained how it can refuse

to treat the BMS-Apotex Dismissal as a court decision trigger based on "administrative burden" when that order is no different from the Teva-Syntex Dismissal.

      **B.     FDA's interpretation continues to be inconsistent with *Granutec*.**

FDA first asserts that *Teva III* "wiped the slate clean" and that it "is not required to reconcile every decision and every regulatory position it has taken in the past." (FDA Br. at 21-22.) Not so. As an initial matter, the D.C. Circuit certainly did not wipe the slate clean regarding FDA's treatment of *Granutec, Inc. v. Shalala*, 139 F.3d 889, 1998 WL 153410 (4th Cir. Apr. 3, 1998). Indeed, *Granutec* was, and remains, one of the D.C. Circuit's primary concerns. Moreover, even aside from *Teva I*, it is well settled that an "agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so." *Indep. Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1258 (D.C. Cir. 1996) (citation omitted); s*ee Freeman Eng'g Assocs. v. FCC*, 103 F.3d 169, 178 (D.C. Cir. 1997) ("[A]n agency may not 'treat like cases differently.'" (citation omitted)); *Bracco Diagnostics, Inc. v. Shalala*, 963 F. Supp. 20, 27 (D.D.C. 1997) (same); *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. HHS*, 300 F. Supp. 2d 32, 42 (D.D.C. 2004) (same).

Here, FDA has done nothing to explain, much less justify, its disparate and inconsistent treatment of *Granutec* in view of these principles and *Teva I*. FDA argues, again, that its "position is consistent with *Granutec*" because that case is clearly a holding on the merits. (FDA Br. at 22.) But that so-called distinction simply did not fly in *Teva I*:

> That *Boehringer* involved a judgment on the merits, while Teva's complaint was dismissed for lack of subject-matter jurisdiction, does not detract from the fact that both proceedings prevent the patent holder from suing the ANDA applicant for patent infringement. *Given that the [Teva-Syntex] dismissal supports estoppel to the same extent as the grant of partial summary judgment at issue in Granutec, it is unclear why the [Teva-Syntex] dismissal would not satisfy the 'court decision' requirement of § 355(j)(B)(5)(iv)(II)*. At least the FDA has not provided

>an explanation wherein there is a material difference for purposes of triggering the 'court decision' provision.

*Teva I*, 182 F.3d at 1011 (emphasis added). As noted above, FDA concedes there is no material distinction between the Teva-Syntex and BMS-Apotex Dismissals, both of which have estoppel effect to the same extent as the partial summary judgment in *Granutec*. As in *Teva I*, FDA still has not explained any material difference for purposes of the court decision trigger.

      **C.**     **FDA's interpretation leads to absurd results in view of its own regulation.**

FDA concedes "that, in certain circumstances, the legal effect of an estoppel and unenforceability of a patent may be similar," but nonetheless argues that the distinction is important because the concept of estoppel is found nowhere in the statute or regulation. (FDA Br. at 20-21.) But again, this form-over-substance argument is nothing more than the very same rationale rejected by the D.C. Circuit in *Teva I*. If, as the D.C. Circuit observed, a court decision giving rise to an estoppel and actual judgment of unenforceability both have the same practical effect of rendering the patent unenforceable against the ANDA applicant, it would be absurd to treat them differently in view of FDA's own regulation. *Teva I*, 182 F.3d at 1009. FDA still has not answered this concern.

FDA's assertion that a court must make the enforceability determination does not fly either. (*See* FDA Br. at 21.) The patent court in the Teva-Syntex dispute never made any determination of unenforceability, but rather dismissed the action for lack of subject matter jurisdiction based on the patentee's disavowal of any intent to sue—just like the BMS-Apotex Dismissal. This purported distinction, however, made no difference to the *Teva I* court: "*To start, or trigger, the period of market exclusivity by a 'court decision,' an ANDA applicant need only obtain a judgment that has the effect of rendering the patent invalid or not infringed with respect to itself.*" *Teva I*, 182 F.3d at 1009-10 (internal citations omitted) (emphasis added). For

the same reasons, FDA's interpretation "runs counter to its explanation for permitting unenforceability to qualify as a 'court decision.'" *Id*. at 1010.

### III. FDA's Statutory Interpretation Cannot Stand Because It Runs Counter To Congressional Purpose And Nullifies The Declaratory Judgment Mechanism.

FDA appears to concede that its interpretation results in precisely the type of manipulation by the patentee to block or delay generic competition that, according to the D.C. Circuit, the court decision trigger was designed to avoid. (*See* FDA Br. at 24-25.) FDA nonetheless seems to suggest that the Agency's own notions of "certainty" somehow override this Congressional purpose. (*See id*. at 25.) Not true.

"The 'reasonableness' of an agency's construction depends on the construction's 'fit' with the statutory language as well as its conformity to statutory purposes." *Abbott Labs.*, 920 F.2d at 988. FDA's interpretation here, purportedly based on Agency notions of convenience and certainty, admittedly ignores and conflicts with Congressional purpose and intent. As clearly articulated by the D.C. Circuit, and confirmed by the *Teva I Remand* Court, "the purpose of the court decision trigger is to ensure that the patent-holder is estopped from suing the ANDA applicant." *Teva I Remand*, 1999 WL 1042743, at *6. FDA's interpretation admittedly "thwarts" that purpose by allowing the patentee to manipulate the system and delay generic competition.[5] Indeed, a subsequent applicant can never use the declaratory judgment

---

[5] The fact is that FDA's interpretation would lead to particularly grievous results in precisely the situation where the court decision trigger is needed most. Specifically, it would allow holders of invalid, unenforceable or non-infringed patents to thwart the mechanisms that Congress created to expedite generic market entry. Indeed, perhaps the greatest absurdity of all is that FDA's interpretation encourages such manipulation in precisely those cases where the brand patent is weakest, or where the subsequent ANDA-filer has developed a clearly non-infringing product— as Apotex did here. (*See* Tsien Decl. Ex. J at 18-20, Teva App. Br., *Teva Pharms. USA, Inc. v. FDA*, No. 99-5022 (D.C. Cir.); *id*. Ex. K at 22, Teva App. Br., *Teva Pharms. USA, Inc. v. FDA*, No. 99-5287, 99-5342 (D.C. Cir.).) FDA's interpretation therefore protects the very types of patents that the entire paragraph IV scheme was designed to defeat.

procedure to obtain a court decision trigger if all a patentee has to do is express its intent not to sue, thus resulting in delays in generic competition.

For similar reasons, FDA's interpretation effectively nullifies the crucial declaratory judgment mechanism for ANDA applicants. FDA's only response is that this is not necessarily so because "[t]he parties are free to argue during the patent litigation that, to the extent it is legally sustainable, the court should render a decision with a holding on the merits that the patent at issue is invalid, not infringed, or unenforceable." (FDA Br. at 26.) But this misses the point entirely. The point, as aptly demonstrated in both the Teva-Syntex and BMS-Apotex cases, is that FDA's suggested approach cannot work once the patentee disavows any intent to sue. When that happens, the district court no longer has subject matter jurisdiction to render any additional decision, and the litigation is over. Under FDA's interpretation, a patentee will be free to manipulate and prevent a court decision trigger from occurring, and thereby delay generic competition, merely by stating its intention not to enforce the patent. In this important respect, FDA's interpretation therefore defeats and renders inoperable the underlying purpose of the declaratory judgment mechanism.[6]

For these independent reasons, FDA's interpretation cannot stand under any standard.

## CONCLUSION

For all of these reasons, the Court should enter an order requiring FDA to: (a) set aside its administrative decision dated April 11, 2006; (b) refrain from awarding any 180-day exclusivity for pravastatin ANDAs; (c) immediately approve Apotex's pravastatin ANDA; and (d) preserve the *status quo* by refraining from approving any other pravastatin ANDA until this

---

[6] Teva's assertions to the contrary are disingenuous. Teva repeatedly argued the exact same thing in *Teva I* and *II*, and even went so far as to suggest that the estoppel-based interpretation, which Teva criticizes here, was the only permissible interpretation of the statute.

determination is made and final approval is granted to Apotex. In the event the Court denies such relief, the Court nonetheless should enter an injunction preserving the *status quo* and staying all pravastatin approvals pending an appeal of this matter to the D.C. Circuit, in order to prevent devastating and irreparable harm to Apotex.

Dated: April 18, 2006.                                Respectfully submitted,

                                                                    APOTEX INC.


                                                      By: _____/s/_____
                                                            Arthur Y. Tsien, D.C. Bar No. 411579
                                                            OLSSON, FRANK AND WEEDA, P.C.
                                                            1400 16th Street, N.W., Suite 400
                                                            Washington, D.C. 20036-2220
                                                            (202) 789-1212
                                                            (202) 234-3550 (facsimile)

Of Counsel:
William A. Rakoczy, D.C. Bar No. 489082
Christine J. Siwik
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60610
(312) 222-6301
(312) 222-6321 (facsimile)

*Counsel for Apotex Inc.*